USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/29/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARY WILSON BURKE, Individually and
On Behalf of All Others Similarly Situated,

                       Plaintiff,                    05 Civ. 0060 (RPP)

                                                                  **OPINION AND ORDER**

               - against -

CHINA AVIATION OIL (SINGAPORE)
CORP. LTD., JIA CHANGBIN, and
CHEN JIULIN,

                      Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

By notice of motion dated August 2, 2005, plaintiff, Mary Wilson Burke, applied to the Court for Letters Rogatory to effect service on defendants residing in Singapore. Fed. R. Civ. P. 4.

At a conference held on March 10, 2005, the Court requested that plaintiff's counsel address the Court's subject matter jurisdiction in this purported securities class action brought on behalf of all persons who purchased or otherwise acquired securities of China Aviation Oil (Singapore) Corporation Ltd. ("China Aviation") between February 5, 2004 and November 30, 2004 (the "Class Period") in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78(j)(b) and 78(t), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. (Pl.'s Mem. of Law in Supp. of App. for Letters Rogatory ("Pl.'s Mem.") at 1.)

**The Amended Complaint Contains no Representations of Activities in the U.S.**

The Amended Complaint contains a number of allegations, none of which indicate any activity by the Defendants in the United States. In a memorandum supporting its application, counsel for the plaintiffs sets forth the grounds for its claim of subject matter jurisdiction, while acknowledging that China Aviation and the individual defendants all reside in Singapore. (Pl.'s Mem. at 1.)

On March 16, 2004, plaintiff, a resident of New York, purchased 1,000 shares of China Aviation through the Over-the-Counter Bulletin Board (OTCBB), a "quotation service that displays real time quotes, last sale prices, and volume information in domestic and certain foreign securities. Eligible securities on the OTCBB include national, regional and foreign equity issues. See http://www.otcmarket200.com/." (Id. at 2.) China Aviation also trades on the Singapore Stock Exchange and the Shanghai Stock Exchange. (Id.)

Quotes for China Aviation are also found on the Pink Sheets, a centralized quotation service. (Id.) In order to be found on the Pink Sheets, one market maker must be willing to quote a company's stock. (Id.) Only broker-dealers registered with the Security Exchange Commission ("SEC"), who are members of the National Association of Securities Dealers ("NASD"), can quote securities in the Pink Sheets. (Id.)

"Throughout the Class Period, China Aviation was listed on OTC Market and the Pink Sheets issued quotes on its securities." (Id.) Pink Sheets are a static paper publication printed weekly, "while the OTCBB displays electronic real time quotes, last sale prices, and volume information for domestic

securities, foreign securities and ADRs. An electronic version of the Pink Sheets is updated once a day and disseminated over market data vendor terminals. http://www.otcmarket2000.com/."[1] (Id.)

During the Class Period, China Aviation issued press releases in English that are found on the Company's web site and available to internet users in the United States: http://caosco.com. (Id.) On May 19, 2003, near the beginning of the Class Period, China Aviation issued a press release entitled, "China Aviation Oil's Q1 2003 Results Reflect Effectiveness of Three-Pronged Strategy." (Id. at 2-3.) In the release reflecting its first ever set of quarterly results, the Company stated in pertinent part:

> Today, CAO trades globally in fuel oil, gas oil, crude oil, petrochemical products and oil derivatives and handles virtually 100% of China's total jet fuel imports. Annual sales revenue was S$1.69 billion in 2002 and market scope has expanded beyond China to ASEA, the Far East and USA.

(Declaration of Lawrence D. McCabe dated August 2, 2005 ("McCabe Decl."), Ex. G at 3.)

China Aviation included similar type of language on other press releases in the Class Period. (McCabe Decl. at Ex. H.)

On June 18, 2004, defendant Chen Jiulin, an officer of China Aviation, gave a speech entitled, "Sharing and Jointly Developing Markets to Achieve Win-Win Business Outcomes," at First China-U.S. CEO Summit,[2] aimed at, among other things, touting China Aviation-U.S. ties in which he stated, "CAO also has extensive cooperative relationship with American firms. For instance, we have

---

[1] Plaintiff asserts that to be listed on the Pink Sheets, "a company needs to find at least one market maker willing to quote the company's stock." (Id.)
[2] In its memorandum in support, plaintiff asserts this speech was given in the United States, but cites to no authority or document to support this statement.

collaborated with Chevron Texaco to supply jet fuel to the US West Coast, and fuel oil to China."[3]

(McCabe Decl., Ex. F at 4.)

**DISCUSSION**

In support of its claims that this Court has subject matter jurisdiction over this action, plaintiff relies on the Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 986 (2d Cir. 1975), cert denied, 423 U.S. 1018 (1975), in which the court stated:

> It is elementary that the anti-fraud provisions of the federal securities laws apply to many transactions which are neither within the registration requirements nor on organized American markets.

Bersch, 519 F.2d at 986.

> We have thus concluded that the anti-fraud provisions of the federal securities laws:
>
> > (1) Apply to losses from sales of securities to Americans resident in the United States whether or not acts (or culpable failures to act) of material importance occurred in this country;

Bersch, 519 F.2d at 993; (Pl.'s Mem. at 3.)

In Bersch, Judge Friendly was confronted by a securities class action brought by a United States citizen "on behalf of thousands of plaintiffs preponderantly citizens and residents of" countries throughout the world, who purchased securities in a secondary offering of common stock by Investors Overseas Bank Limited (IOB), an IOS subsidiary, pursuant to an IOS prospectus. Bersch v. Drexel Firestone, Inc., 519 F.2d at 977 – 978, 980. In that action, the prospectuses which were delivered stated "that the shares 'are not being offered in the United States of America . . . or any area subject to its jurisdiction'" and had not been registered in the United States. (Id. at 980-981.) The court found

---

[3] In its memorandum in support, plaintiff states this speech was aimed at "interesting investors in China Aviation

-4-

that representatives of the issuer met on many occasions in New York to initiate, organize, and structure its offering of securities, and that their accountants, attorneys and underwriters worked on the prospectus in New York. (Id. at 985, n. 24.) It also found that 22 American residents had purchased stock issued on the prospectus and that under the facts presented there was some mailing of the prospectuses into the United States and some reliance on them. (Id. at 991.) The court held it had subject matter jurisdiction over claims of American purchasers of the issuer's foreign offering, as against defendants IOS and Cornfeld, who were responsible for the offering. (Id.) Bersch involved purchasers of stock issued by prospectus of the issuer that the court found were mailed into the United States. This is entirely different from a scenario involving purchases of stock through the OTCBB or on the Pink Sheets issued by a foreign-based company who is not alleged to have taken any steps to cause its stock to be marketed in this country.

In In re Gaming Lottery Securities Litigation, 58 F. Supp. 2d 62 (S.D.N.Y. 1999), also relied on by plaintiff, the defendants were found to have conducted substantial business in the United States, including the purchase and operation of several gaming-related business in the State of Washington and New York. (Id. at 65-66.) Furthermore, Gaming Lottery common stock was listed and traded on the National Association of Security Dealers Automated Quotation System ("NASDAQ") national market in this country. (Id. at 65.)

Plaintiff also cites Itoba Ltd. v. LEP Group PLC, in which the Second Circuit found subject matter jurisdiction based on defendant Lep Group PLC depositing 12,842,850 of its 136 million shares of stock in an American depository which, in turn, issued American Depository Receipts ("ADRs") on

---

stock," but cites to no language in the text supporting this claim.

the NASDAQ. 54 F.3d 118, 120 (2d Cir. 1995). The court applied a mixture of the "conduct" and "effects" tests to find subject matter jurisdiction. (Id. at 122); citing Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1336-37 (2d Cir. 1972) and Schoenbaum v. Firstbrook, 405 F.2d 200, 206-209 (1968), cert. denied, Mantez v. Schoenbaum, 395 U.S. 906 (1969).

"Under the conduct test, a federal court has subject matter jurisdiction if (1) the defendant's activities in the United States were more than 'merely preparatory' to a securities fraud conducted elsewhere, and (2) these activities or culpable failures to act within the United States 'directly caused' the claimed losses." Itoba, 54 F.3d at 122 (quoting Bersch, 519 F.2d at 987; Alfadda v. Fenn, 935 F.2d 475, 478 (2d Cir.), cert. denied, 502 U.S. 1000 (1991).) The court noted that the "magistrate judge correctly stated the conduct test when she said that Itoba must prove that Lep's United States-based activities directly caused Itoba's financial losses." Itoba, 54 F.3d at 122. The effects test relates to the situation where the "fraud which takes place abroad … impacts on 'stock registered and listed on … national securities exchange and [is] detrimental to the interests of American investors.'" (Id. at 124) (quoting Schoenbaum v. Firstbrook, 405 F.2d 200, 208 (2d Cir. 1968).

Plaintiff has failed to meet either the conduct test or the effects test or a combination of both tests as articulated in these cases. Plaintiff claims that China Aviation's "website contained the false and misleading financial statements which constitute the core of the case" (Pl.'s Mem. at 4), but there is no showing that the website was maintained in the United States. Nor is there any showing that China Aviation took any actions to cause that website information to be transmitted to United States investors. U.S. investors in clicking on the China Oil website took the action which could cause the information to be transmitted to the United States. Were the Court to view it otherwise, any foreign corporation with a

Court to view it otherwise, any foreign corporation with a website would be subject to securities fraud litigation in the United States if a United States resident had bought its securities from some market maker in this country. Plaintiff's attempt to equate information obtained via a website with mail directed to the stockholder (Pl.'s Mem. at 5), as in Bersch, is rejected. Furthermore, plaintiff's attempt to equate the findings in Itoba, where there was a direct linkage between the price of a security on the NASDAQ and the price of a security on a foreign exchange, is rejected. The NASDAQ is recognized as maintaining an efficient market, but the Court is unaware of any court holding that the OTCBB or Pink Sheets meet this same standard. More importantly, the evidence presented does not meet the conduct and effects test used in Itoba. Accordingly, the application of plaintiff to effect service of process on the defendants in this purported class action by Letters Rogatory is denied because plaintiff has failed to demonstrate subject matter jurisdiction in this Court. For the foregoing reasons, plaintiff's motion to consolidate actions, appoint lead plaintiff, and appoint lead attorneys is also denied.

IT IS SO ORDERED.

Dated: New York, New York
November 29, 2005

Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Order sent to:

Murray, Frank & Sailer LLP
275 Madison Avenue, 8th Floor
New York, NY 10016
Attn: Brian P. Murray

Eric J. Belfi
Tel: (212) 682-1818
Fax: (212) 682-1892

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
200 Broadhollow Road
Melville, NY 11747
Attn: Samuel H. Rudman
Lawrence McCabe
Tel: (877) 992-2555
Fax: (631) 367-1173